UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELSTONE CAPITAL, LLC, | No.  2:16-cv-01124-KJM-GGH |
| Plaintiff, | |
| v. | ORDER |
| BELLSTONE PARTNERS, LLC; BELLSTONE COMMERCIAL, INC.; and BELLSTONESHARES, LLC, | |
| Defendants. | |

This trademark infringement case comes before the court on the motion to dismiss brought by defendants Bellstone Partners, LLC.[1]  ECF No. 21.  Plaintiff Belstone Capital, LLC opposes, ECF No. 26, and defendants replied, ECF No. 27.  On January 13, 2017, the court held a motion hearing, at which Maurice Ross and Daniel Ballard appeared for plaintiff and Michael Thomas appeared for defendants.  For the following reasons, the court GRANTS defendants' motion.

---

[1] The court notes that in some instances the complaint and parties' moving papers implicate only one defendant in a particular action.  For simplicity, the court refers to defendants collectively in this order but is aware of the distinction between them.

1    I.        FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

2              Plaintiff is a corporate finance company specializing in technology development

3    and capital formation with a principal place of business in New York.  Compl. ¶¶ 9, 11, ECF

4    No. 1.  Defendants are companies involved in real estate lending and real estate development with

5    principal places of business in California.  *Id.* ¶¶ 8, 12–15.  Plaintiff's and defendants' businesses

6    and customers do not overlap.  *See id.* ¶¶ 10, 16.  Defendants first began using the "Bellstone"

7    trademark in June 2004, *id.* ¶ 37, and registered it as a word mark on August 3, 2010 with the

8    U.S. Patent and Trademark Office (USPTO) in International Class ("IC") 36 for "Lending

9    consultant services," Registration Number 3828103 (the "-103 registration"), *id.* ¶¶ 5, 26.

10   Plaintiff has been using the "Belstone" mark since at least 2010.  *Id.* ¶ 37.  Plaintiff currently has

11   a pending application with the USPTO to register its Belstone mark, Serial Number 86973133.

12   *Id.* ¶¶ 6, 31.  During more than six years of concurrent use, there has been no marketplace

13   confusion caused by the parties' use of their respective marks.  *Id.*

14             On April 20, 2016, plaintiff sent defendants a letter requesting that defendants

15   enter into a co-existence, consent, and cross-license agreement whereby they would confirm that

16   plaintiff and defendants could concurrently use their respective marks, and by agreement

17   acknowledge that such use would not cause marketplace confusion among their respective

18   customer bases or otherwise.  *Id.* ¶ 20.  Defendants rejected plaintiff's request, and instead

19   demanded plaintiff cease and desist infringing defendants' mark.  *Id.* ¶ 21.  On May 6, 2016,

20   defendants filed a new trademark registration application with the USTPO, seeking broader

21   protection for their mark under IC 9 (computer software), 35 (business data analysis services in

22   the field of real estate), 36 (capital investment in the field of real estate), and 42 (software for real

23   estate investments).  *Id.* ¶¶ 22–24.  Defendants' Serial Number for this application is 87027088

24   (the "-088 application").  *Id.*

25             Plaintiff alleges, however, that defendants cannot perform most of the services

26   they list in their -088 application.  *Id.* ¶ 25.  Most of the services would require defendants to be

27   registered as a real estate broker by the California Bureau of Real Estate.  *Id.*  Although the

28   Managing Director for all three defendants, Robert B. Price IV, does have a real estate license, at

1   least one defendant, Bellstone Partners, LLC, is not so licensed, and defendants without real

2   estate licenses "may not lawfully provide lending consultant services for real estate development

3   projects" under other parties' licenses. *Id.* ¶¶ 25, 56.  Additionally, defendants' assertion in the

4   application leading to their -103 registration, that they were using the "Bellstone" mark in

5   interstate commerce for lending consulting services, was fraudulent because defendants provide

6   their services under the trade name "Bellstone Partners, LLC," not "Bellstone" alone, and then

7   only in Southern California and Sacramento, not in interstate commerce.  *Id.* ¶ 26.

8           On May 24, 2016, plaintiff filed the complaint in this court, seeking: (1) a

9   declaration of non-infringement of defendants' trademark rights; (2) a declaration that defendants

10  cannot register, via their -088 application, the "Bellstone" mark for services performed

11  unlawfully; and (3) cancellation of defendants' -103 registration of the "Bellstone" mark because

12  it was obtained fraudulently.  *See generally id.*

13          After the time for responding to the complaint was extended by stipulation,

14  defendants filed a motion to dismiss on September 9, 2016.  Plaintiff opposes each of defendants'

15  contentions, Opp'n, ECF No. 26, and defendants have replied, Reply, ECF No. 27.

16  II.     LEGAL STANDARD

17          Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

18  complaint for "failure to state a claim upon which relief can be granted."  The motion may be

19  granted only if the complaint "lacks a cognizable legal theory or sufficient facts to support a

20  cognizable legal theory."  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th

21  Cir. 2013).  Although a complaint need contain only "a short and plain statement of the claim

22  showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion

23  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

24  claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

25  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

26  more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

27  conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting

28  *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

1   for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

2   its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the

3   interplay between the factual allegations of the complaint and the dispositive issues of law in the

4   action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

5          In making this context-specific evaluation, this court must construe the complaint

6   in the light most favorable to the plaintiff and accept its factual allegations as true.  *Erickson v.*

7   *Pardus*, 551 U.S. 89, 93–94 (2007).  However, "'conclusory allegations of law and unwarranted

8   inferences' cannot defeat an otherwise proper motion to dismiss."  *Schmier v. U.S. Court of*

9   *Appeals for Ninth Circuit*, 279 F.3d 817, 820 (9th Cir. 2002) (quoting *Associated Gen.*

10  *Contractors of Am. v. Metro. Water Dist. of S. California*, 159 F.3d 1178, 1181 (9th Cir. 1998)).

11  III.    <u>JUDICIAL NOTICE</u>

12         Defendants ask the court to take judicial notice of four public records they say are

13  maintained on the USPTO website.  *See* Defs.' Req. for J. Notice ("RJN") Exs. A–D, ECF

14  No. 21-2.  Plaintiff also asks the court to take judicial notice of a public record maintained on the

15  USPTO website.  Pl.'s RJN Ex. 3, ECF No. 26-1.  "A court may take judicial notice of 'matters of

16  public record' without converting a motion to dismiss into a motion for summary judgment, as

17  long as the facts noticed are not subject to reasonable dispute."  *Intri-Plex Techs., Inc. v. Crest*

18  *Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (changes, brackets, citations and quotations

19  omitted).  Accordingly, the court takes judicial notice of the marks' filings, though not the content

20  of the documents themselves, because the filings are a matter of public record and their veracity is

21  not in dispute.

22         Plaintiff also asks the court to take judicial notice of two emails sent from

23  defendants' counsel to plaintiff's counsel, Pl.'s RJN Ex. 1, and a letter sent from plaintiff's

24  counsel to defendants' counsel, Pl.'s RJN Ex. 2.  These two emails and the letter each are

25  referenced in plaintiff's complaint.  Compl. ¶¶ 20–21.  In reviewing a motion to dismiss, the court

26  may "consider documents in situations where the complaint necessarily relies upon a document or

27  the contents of the document are alleged in a complaint, the document's authenticity is not in

28  question and there are no disputed issues as to the document's relevance."  *Coto Settlement v.*

4

1   *Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  In this case, the complaint only references the

2   emails and letter, but does not necessarily rely upon them.  Because the complaint already alleges

3   the substance of the emails and letter, because they are not public records, and they are not

4   documents "necessarily relie[d] upon," the court declines to judicially notice these documents.

5   IV.     DISCUSSION

6           The court notes defendants are not challenging plaintiff's first claim seeking a

7   declaration of non-infringement.  Instead, defendants challenge plaintiff's second and third claims

8   for relief.  Chronologically, plaintiff's third claim concerns defendants' -103 trademark registered

9   in 2010, whereas plaintiff's second claim concerns defendants' -088 trademark application filed

10  in 2016.  Although defendants advance numerous arguments, the court addresses only

11  defendants' first two — incontestability and unlawful use — as they are dispositive.

12          A.      Trademark Incontestability

13          Defendants argue their -103 registration became incontestable as a matter of law in

14  2015.  Mot. at 11–12.  Under the federal Lanham Act, a trademark registration becomes

15  incontestable if and when the mark has been in continuous use for five years after the initial

16  registration, there has been no final decision adverse to the registrant's claim of ownership of the

17  mark, there is no pleading challenge to the validity of the mark, and the registrant files an

18  affidavit with the Commissioner of Patents within one year after the expiration of the initial five-

19  year period, affirming the mark is still in use.  15 U.S.C. § 1065.  Registration with the USPTO

20  "constitute[s] 'prima facie evidence' of the validity of the registered mark and of the registrant's

21  exclusive right to use the mark on the goods and services specified in the registration."  *Official*

22  *Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1390 (9th Cir. 1993) (quoting 15 U.S.C. § 1115(a)).

23  "The incontestability provisions of the Lanham Act were designed to provide a means for a

24  trademark holder to quiet title in the ownership of his mark."  *Reno Air Racing Ass'n., Inc. v.*

25  *McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) (quotation omitted).  In this case, defendants

26  registered their -103 mark on August 3, 2010.  Compl. ¶ 5.  On August 3, 2015, defendants filed a

27  /////

28

1    "Combined Declaration of Use and Incontestability" with the USPTO regarding their -103 mark.

2    *See* Compl. ¶¶ 52–55; Defs.' RJN Ex. C at 1–2, Ex. D.  Defendants' mark therefore became

3    incontestable in 2015.  *See id.*

4            As provided by 15 U.S.C. § 1119, courts have the power to cancel a registered

5    trademark, as well as "any pending trademark applications relating to the [registered mark]."  *Airs*

6    *Fragrance Prod., Inc. v. Clover Gifts, Inc.*, 395 F. App'x 482, 485 (9th Cir. 2010).  After a mark

7    has become incontestable, however, the court's power is limited to the circumstances defined by

8    statute, 15 U.S.C. § 1115; *see Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 203

9    (1985).  The provisions of the Lanham Act enumerating the specific defenses and defects that will

10   defeat incontestability are found in 15 U.S.C. § 1115(b).  Plaintiff alleges two of these defects in

11   its complaint, both of which defendants challenge: (1) fraud in the mark's procurement, 15 U.S.C.

12   § 1115(b)(1); and (2) misrepresentation of the source of defendants' services, *id.* § 1115(b)(3).

13   *See* Compl. ¶¶ 62–64.

14           1.      Fraud

15           According to plaintiff, defendants' "procurement and maintenance of [their] -103

16   registration constitutes fraud and justifies cancelling the registration" because defendants

17   knowingly made false representations during the registration process.  *Id.* ¶ 62.  Specifically,

18   plaintiff pleads that defendants procured their trademark fraudulently by (1) averring before the

19   USPTO that they were providing "lending consultant services" with their mark when they were

20   not lawfully licensed to provide those services in California; and (2) averring before  the USPTO

21   that they used the mark continuously in interstate commerce for five years when, in fact, the mark

22   they were actually using was materially different from the one depicted in the application for

23   the -103 registration, and they did not use their mark in interstate commerce.  *Id.* ¶¶ 62–63.

24           As noted, under the Lanham Act, a court may cancel the registration of an

25   incontestable trademark when "the right to use the mark was obtained fraudulently."  15 U.S.C.

26   § 1115(b)(1).  "Fraud in procuring a mark occurs when an applicant knowingly makes false,

27   material representations of fact in connection with an application."  *Quiksilver, Inc. v. Kymsta*

28

1    *Corp.*, 466 F.3d 749, 755 (9th Cir. 2006) (quoting *L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d

2    1349, 1351 (Fed. Cir. 1999)).

3           In this case, plaintiff does not plausibly allege that defendants committed fraud on

4    the USPTO.  Regarding plaintiff's assertion that defendants cannot provide "lending consulting

5    services" because they have not had a license to do so, plaintiff's assertion is undermined by the

6    factual allegation, found in its own pleadings, that the Managing Director for all defendants,

7    Robert B. Price IV, does have the requisite license.  Compl. ¶¶ 51, 56.  Plaintiff alleges without

8    citation to authority that defendants, and not merely defendants' employees, must have a license

9    for defendants to engage in the business of "lending consulting services," but this allegation is

10    overly formalistic and illogical on its face.  By way of analogy, a courier delivery services

11    company that transports packages in delivery trucks does not have a driver's license; each of its

12    drivers does.  Such a company would not commit fraud by representing it is in the business of

13    trucking.  Plaintiff's pleadings are insufficient to state a claim absent more particularized

14    allegations as to why a particular corporate defendant must have a license.

15           As for plaintiff's allegation that defendants committed fraud when registering the

16    name "Bellstone" alone, when it was clear from the specimen provided to the USPTO that

17    defendants were in fact using the trade name "Bellstone Partners, LLC.,"  this allegation is

18    specious at best.  *See id.* ¶¶ 52–53.  To sufficiently allege fraud in the procurement, plaintiff must

19    plead that defendants "knowingly ma[de] false, material representations of facts in connection

20    with [their] application."  *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (citation

21    omitted); *accord Quiksilver*, 466 F.3d at 755.  Instead, plaintiffs point to the very specimen

22    defendants provided to the USPTO, which contains the word "Bellstone."  *See* Compl. ¶¶ 52, 54.

23    In other words, plaintiff's own pleadings demonstrate defendants provided the USPTO with the

24    information plaintiff alleges defendants withheld, undermining any allegations of fraud.

25    Although plaintiff may disagree with the USPTO's decision to register the word mark "Bellstone"

26    based on a specimen that reads "Bellstone Partners, LLC," that disagreement does not make out a

27    claim of fraud.  Additionally, "[a] trademark is a proper adjective designating a particular thing

28    and distinguishing it from other like things."  *Highline Capital Mgmt., LLC v. High Line Venture*

1   *Partners, L.P.*, No. 15-660, 2015 WL 10847688, at *3 (S.D.N.Y. Oct. 1, 2015) (citations

2   omitted).  Here, the addition of the words "Partners, LLC," is "purely descriptive and . . . does not

3   change the commercial impression of the mark."  *See id.* (citations omitted).  Accordingly,

4   plaintiff has not sufficiently alleged defendants committed fraud when registering the name

5   "Bellstone" alone.

6           Plaintiff's allegation that defendants committed fraud by materially altering their

7   mark fails for similar reasons.  *See* Compl. ¶¶ 54–55.  As with the specimen defendants provided

8   the USPTO with its initial application for the -103 word mark, plaintiff's alleged evidence of

9   misrepresentation is again the very specimen defendants provided to the USPTO.  Even given that

10   defendants provided the USPTO with two specimens that appear different, plaintiff cannot

11   plausibly allege fraud when defendants provided the USPTO with both.  *Cf. Levi Strauss & Co. v.*

12   *Abercrombie & Fitch Trading Co.*, No. 07-03752, 2008 WL 4614660, at *9 (N.D. Cal. Oct. 16,

13   2008) ("Statements of honest, but perhaps incorrect belief or innocently made inaccurate

14   statements of fact do not constitute 'fraud.'" (brackets and quotation omitted)).

15           Finally, plaintiff's allegation that defendants committed fraud by misrepresenting

16   that they used their mark in interstate commerce fails in light of plaintiff's allegations that

17   defendants advertised their services and their mark through their website.  *See id.* ¶¶ 15, 49–50.

18   "Because the internet is an instrumentality of interstate commerce, courts have repeatedly held

19   that the [ ] use of a trademark on the internet satisfies the 'in commerce' requirement."  *AvePoint,*

20   *Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496, 512 (W.D. Va. 2013) (citing cases) (quotation

21   omitted); *see also Lobo Enterprises, Inc. v. Tunnel, Inc.*, 822 F.2d 331, 332 (2d Cir. 1987) ("It is

22   well established that Lanham Act jurisdiction extends to the limit of Congress's power to regulate

23   interstate commerce."); *accord Thompson Tank & Mfg. Co. v. Thompson*, 693 F.2d 991, 993 (9th

24   Cir. 1982).  Therefore, by plaintiff's own pleadings, defendants have satisfied the "in commerce"

25   requirement.  *See Atkins v. City of Chicago*, 631 F.3d 823, 831–32 (7th Cir. 2011) (under

26   *Twombly* and *Iqbal* courts need not accept as true allegations in the complaint that are fantastic or

27   contradicted in the complaint itself).

28

1    Plaintiff has not sufficiently pled defendants committed fraud to defeat the

2    incontestability of defendants' mark.

3         2.    Misrepresenting the Source of the Services

4    Plaintiff's misrepresentation allegation is derivative of its fraud allegation.

5    Plaintiff contends a specific defendant, Bellstone Partners, LLC, was required to have, and did

6    not have, a real estate broker license to perform lending consultant services under California law.

7    Compl. ¶ 57.  Plaintiff alleges that because this defendant could not lawfully provide lending

8    consulting services, it must not have performed those services, and therefore it had to have made

9    a material misrepresentation to the USPTO by stating it did.  *See* Compl. ¶ 53, 55.  This leap in

10   logic is the type of "unwarranted inference [that] cannot defeat an otherwise proper motion to

11   dismiss." *Schmier*, 279 F.3d at 820.  Nowhere in the complaint does plaintiff explicitly allege

12   this defendant did not perform the services at issue.  To the contrary, plaintiff implies throughout

13   the complaint that the defendant did, in actuality, provide these services, as defendant's providing

14   these services is the basis for plaintiff's fraud and misrepresentation allegations.  *See* Compl.

15   ¶¶ 26, 53, 57, 63.

16   Accordingly, plaintiff has not plausibly pled that defendants made a material

17   misrepresentation to the USPTO.

18   For the reasons stated above, the court finds plaintiff has not pled facts showing

19   fraud and misrepresentation sufficient to defeat the incontestability of defendants' trademark.

20   Defendants' motion to dismiss plaintiff's third claim for relief is GRANTED.

21        B.    Unlawful Use

22   Plaintiff's second claim for relief, that defendants cannot register a mark with their

23   -088 application for services performed unlawfully, is similar to its fraud and misrepresentation

24   allegations.  More specifically, plaintiff alleges in its second claim for relief that "most, if not all,

25   of the services that [defendants] list[ ] in . . . [their] -088 application must be" performed by a real

26   estate broker licensed by the California Bureau of Real Estate.  Compl. ¶ 43.  Because defendants

27   are not licensed real estate brokers, plaintiff argues, they cannot lawfully perform the services

28

9

1    listed in their -088 application, and a trademark used unlawfully cannot be registered with the

2    USPTO.  *Id.* ¶ 44.

3                    Trademark rights arise from the use of a mark to identify goods or services in

4    commerce, *B & B Hardware, Inc. v. Hargis Indus., Inc.*, __ U.S. __, 135 S. Ct. 1293, 1299–1300

5    (2015), and "use in commerce only creates trademark rights when the use is *lawful*," *CreAgri,*

6    *Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) (emphasis in original).  There

7    are two rationales for this rule:

8                        First, as a logical matter, to hold otherwise would be to put the
             government in the anomalous position of extending the benefits of
9            trademark protection to a seller based upon actions the seller took in
             violation of that government's own laws . . . .  Second, as a policy
10           matter, to give trademark priority to a seller who rushes to market
             without taking care to carefully comply with the relevant
11           regulations would be to reward the hasty at the expense of the
             diligent.
12

13   *CreAgri, Inc.*, 474 F.3d at 630 (quotations and citations omitted).

14                    However, "[t]here must be some nexus between use of a mark and an alleged

15   violation before it can be said that the unlawfulness . . . has resulted in a trademark's invalidity."

16   *Id.* at 631 (quotation omitted).  Additionally, trademark protection is not precluded by violations

17   of law that are "immaterial," in other words when the unlawful violation is not "of such gravity

18   and significance that the usage [of the mark] must be considered . . . so tainted that, as a matter of

19   law, it [enjoys] no trademark rights."  *Id.* at 633 (quoting *Gen. Mills Inc. v. Health Valley Foods*,

20   24 U.S.P.Q.2d 1270, 1274 (1992)).  "[A] case by case determination is preferable to a blanket

21   policy of finding every possible technical violation to result in cancellation of a registration, no

22   matter how minor or harmless the violation may be."  *Gen. Mills Inc.*, 24 U.S.P.Q.2d at 1274.  It

23   appears unsettled whether the unlawful use doctrine applies only when the trademark holder

24   violates federal laws, or whether it also applies when the trademark holder violates only state

25   laws.  *See Veronica's Auto Ins. Servs., Inc. v. Veronica's Servs., Inc.*, No. 13-01327, 2014 WL

26   7149530, at *5 (C.D. Cal. Dec. 15, 2014) (comparing cases).

27   /////

28   /////

                                                            10

1      Assuming without deciding that violations of state law can be grounds for

2   cancellation of trademark protections under the unlawful use doctrine, plaintiff's pleadings fail

3   because, even if true, they do not establish that defendants violated state law as discussed above.

4   Plaintiff acknowledges that each defendant's Managing Director, Robert B. Price IV, is a licensed

5   real estate broker.  *See* Compl. ¶ 56.  It also appears from the face of the complaint that one

6   defendant, Bellstone Commercial, Inc., also has the requisite license.  *See id.*  Although plaintiff

7   alleges one defendant may not offer lending consulting services under the license of a co-

8   defendant or one of its employees, *see id.*, plaintiff never pleads a specific instance when any

9   defendant allegedly offered lending consulting services in violation of state law.  Without such

10  specificity, plaintiff's pleadings fail to establish a claim as a matter of law.

11      Additionally, in its second claim for relief plaintiff alleges that "most, if not all, of

12  the services listed by [defendants]" in the -088 application would require defendants to be a

13  licensed real estate broker.  *Id.* ¶ 43.  Pleading "most, if not all" is not the same as pleading "all,"

14  and plaintiff has identified no specific instance in which defendants violated California law.  For

15  this reason too plaintiff does not adequately plead unlawful use because the complaint relies only

16  on vague and conclusory innuendo, even when viewed in the light most favorable to the plaintiff,

17  and does not establish that defendants ever acted unlawfully.

18      Plaintiff has not sufficiently pled that defendants' unlawful use of their mark

19  would warrant a cancellation of their -088 application.  Defendants' motion to dismiss plaintiff's

20  second claim for relief is GRANTED.

21  V.      CONCLUSION

22      For the aforementioned reasons, defendants' motion to dismiss plaintiff's second

23  and third causes of action is GRANTED.  Federal Rule of Civil Procedure 15(a)(2) provides that

24  "[t]he court should freely give [a party leave to amend its pleading] when justice so requires," and

25  the Ninth Circuit has "stressed Rule 15's policy of favoring amendments."  *Ascon Properties, Inc.*

26  *v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).  Because amendment has not been shown

27  to be futile, plaintiff is granted leave to amend its complaint within fourteen (14) days of the

28

1   filing of this order.  If plaintiff elects not to amend its complaint, this case will proceed solely on

2   plaintiff's first claim, which is unaffected by this order.

3              This resolves ECF Nos. 21, 26, and 27.

4              IT IS SO ORDERED.

5   DATED:  March 27, 2017.

6

7   _____

8                        UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28